THE PEOPLE OF THE STATE OF NEW YORK EX REL.
THE WESTERN UNION TELEGRAPH COMPANY,
APPELLANT, *v.* MICHAEL A. TIERNEY AND OTHERS,
ASSESSORS OF THE CITY OF TROY, RESPONDENTS.

*Interstate commerce — a tax imposed by a State upon the property of a telegraph com-
pany is not an interference with interstate commerce — judicial notice that the
company is employed by the United States government — that its business extends
beyond the limits of the State — affidavits to assessment-rolls, before whom they may
be taken — waiver.*

In proceedings to review an assessment upon the property of a telegraph company,
incorporated under the laws of the State of New York, it was claimed that
section 2 of chapter 659 of the Laws of 1886, imposing the tax, was in violation
of article 1 of section 8 of the Constitution of the United States, as said act of
1886 affected interstate commerce, which was a subject of federal jurisdiction.

*Held,* that the court would not take judicial notice of the fact that the relator
conducted an interstate business and operated its telegraph lines outside of the
territorial jurisdiction of the State of New York, nor of the fact that, as the agent
of the federal government for certain purposes, under the act of July 24, 1886
(U. S. Rev. Stat., §§ 5263–5269), its business extended beyond the limits of the
State of New York, nor of the fact that it had assumed such relations thereunder
with the United States as to deprive the State, by which it was created, and within
which it was proved to have property liable to taxation, from exercising its
powers of taxation.

That where the tax is one upon the corporate property, and not upon the right of
the corporation to do business, even though the corporate business extends
beyond the limits of the State in which the tax is imposed, the tax is not a tax
upon interstate commerce prohibited by the Federal Constitution.

*Semble,* that a commissioner of deeds of the city of Troy, and the justice of the
Justice's Court of Troy, if not county officers of the county of Rensselaer author-
ized by law to administer oaths to assessors, are officers in the county of Rensselaer
authorized by law to administer such oaths.

358    PEOPLE ex rel. W. U. TEL. CO. v. TIERNEY.

THIRD DEPARTMENT, JULY TERM, 1890.

That if the assessment-roll was improperly verified, such defect was waived by
the relator's failure to make it one of the grounds for the issuing of the *certiorari*
to review such assessment, as required by section 1 of chapter 269 of the Laws
of 1880.

APPEAL from a judgment and determination, made at a Special
Term of the Supreme Court and entered, on the 23d day of August,
1888, in the office of the clerk of Rensselaer county, adjudging that
the writ of *certiorari* allowed herein be quashed, and that the defend-
ants, as general assessors, recover the costs of this proceeding.

The cause was brought on to trial at a Special Term of the Supreme
Court, held at the city of Troy, Rensselaer county, on July 2, 1888.

*King & King, Wager Swayne, Brown & Wells*, for the appellant.

*R. A. Parmenter*, for the respondents.

MAYHAM, J. :

We have examined the questions of fact relied upon by the relator
to establish the over-valuation or inequality in the assessment com-
plained of on *certiorari* from assessments in Troy for the year 1885,
which is substantially like the evidence in this case, and reached the
conclusion that the evidence did not justify a reversal of the judg-
ment upon the facts, and we discover no reason for reaching a dif-
ferent conclusion in this case upon the facts on this appeal. (*People
ex rel. Wallkill Valley R. R. Co.* v. *Keator*, 36 Hun, 592.)

The question raised by the appeal in this case differs from those
arising on the *certiorari* for 1885 in two particulars, which require
consideration.

*First.* In this case the relator appeared before the assessors on
"grievance day" and objected to the assessment, which was not
done, as we held, in that case; and,

*Second.* Chapter 659 of the Laws of 1886 modified or changed in
some degree the law relating to the assessment of telegraph lines as
it had theretofore existed.

On the day fixed by the public notice for hearing complaints by
persons and corporations claiming to be aggrieved by the assessment
of 1886, the relator appeared before them and presented an affidavit,
in substance, that relator's real property in Troy was worth not to
exceed $4,000, and, by their attorney, requested the assessors to
modify such assessment so as to conform to that amount, which they

PEOPLE ex rel. W. U. TEL. CO. v. TIERNEY.     359

THIRD DEPARTMENT, JULY TERM, 1890.

declined to do, and also called attention to the judgment setting aside the assessment of 1883, and ordering a re-assessment, but it does not appear that any additional facts were submitted to such assessors. On the trial of this case at Special Term the same facts were relied upon as in the trial of the *certiorari* of 1885 upon the question of value and all the other questions, except the additional fact of appearance on " grievance day."

It appears that the assessment for 1886 was at $12,000, or for $300 more than for the year 1885, but, as we have held in that case, we see no sufficient reason for reversal for over-valuation. It is true that the assessment was slightly increased, but by section 2 of chapter 659 of the Laws of 1886, in force at the time of the completion of the assessment for that year, " the apparatus, instruments or other thing connected with, or used as part of such line in such town or ward," were made liable to assessment as lands, and the proof shows that the relators had in Troy as apparatus, instruments consisting of relays, sounders, switch-boards, keys, batteries, electric-light protectors, and other apparatus connected with their lines not estimated in the estimate of value of material and cost of construction, which the evidence shows were in use, and which the trial court might well have regarded as sufficient to justify the small increase in value over the previous year. Nor were the respondents bound to adopt the statement filed by Brewer with the county treasurer. It was substantially in the same form as the one filed by Peck in 1883, which was held by PECKHAM, J., not to be in conformity with chapter 597 of the Laws of 1881, under which it purports to have been filed, and that it is, therefore, null and void and of no effect in law.

That certificate, therefore, furnished no evidence upon which the assessors could legally act. But it is insisted by the relator that section 2 of chapter 659 of the Laws of 1886, so far as the assessors acted under or by authority of the same, is in violation of article 1, section 8 of the Constitution of the United States, and, therefore, illegal and void, as it affects interstate commerce, and is, therefore, subject to the federal jurisdiction.

It is conceded that the relator is a corporation created under the laws of New York, and there is no proof in this case that its lines extend beyond the limits of the State of New York. But it is insisted that

360     PEOPLE ex rel. W. U. TEL. CO. v. TIERNEY.

THIRD DEPARTMENT, JULY TERM, 1890.

this court should take judicial notice of the fact that the relator conducts an interstate business and is the agent of the federal government for certain purposes under the act of July 24, 1866. (U. S. R. S., 5263–5269.)

We have not been cited to any authority holding that the court, on appeal, can take judicial notice of the existence or operation of the telegraph lines of the relator outside of its territorial jurisdiction without proof of their existence.

While there are certain facts of a public nature of which the court may take judicial notice, still we understand the rule to be that they must be of a public nature, such as the political divisions of the country, public statutes, the *de facto* existence of independent nations, and the existence of a state of war between such nations; but the fact that an act of congress has made it possible for a telegraph company, which is purely a private corporation, created under general laws, by which certain restrictions and limitations are imposed, to, under certain restrictions, establish business relations with the federal government, does not, we think, without proof that such relations have been formed, justify the court in assuming that it extends beyond the limits of the State, and has assumed such relations with the United States as to deprive the State by which it was created, and within which it is proved to have property liable to taxation, from exercising its taxing powers.

It cannot, therefore, be claimed, under the evidence in this case, that the exercise of the taxing power upon the relator's property in the city of Troy is an interference with the constitutional rights of the federal government to "regulate commerce * * * among the several States" within article 1, section 8, subdivision 3 of the Federal Constitution, especially as there was no finding by the court or request by the relator of the court to find that the telegraph extended into other States, and no evidence to establish that proposition.

The case of *Leloup* v. *Port of Mobile* (127 U. S. R., 645), does not seem to be in point on this question. In that case the proof showed that a large part of the relator's business was interstate and international, and the tax imposed seems to be a license tax, and the question propounded by the court was: "Can a State prohibit such a company from doing such a business within its jurisdiction, unless

PEOPLE ex rel. W. U. TEL. CO. v. TIERNEY.    361

Third Department, July Term, 1890.

it will pay a tax and procure a license for the privilege?" and the court answers: "If it can, it can exclude such companies and prohibit the transaction of such business altogether. We are not prepared to say that can be done." That is not this case, no license tax is sought to be imposed. The tax purports to be a tax upon the relator's property, and not upon its right to do business; and to hold that a tax upon the property of a corporation within the State, even if we assume that it is connected with lines in other States, was a tax upon interstate commerce and prohibited by the Federal Constitution, would, it seems to us, exempt from State taxation many of the great railroads and other corporations within this State, and thus practically exonerate and relieve them from all taxation.

It was entirely competent for the legislature to authorize the taxation of "Telegraph Lines." "Lines shall include the interest in the land on which the poles stand, the right or license to erect such poles on land, and all poles, arms, insulators, wires and apparatus, instruments or other thing connected with or used as a part of such line in such town or ward." (Chap. 659, Laws of 1886.)

Nor do we think this assessment should be set aside or this judgment be reversed because of the official character of the officers before whom the assessors swore to the assessment-rolls either in 1885 or 1886 or 1887.

It is objected that the commissioner of deeds of the city of Troy and the justice of the Justice's Court of Troy are not officers of the county of Rensselaer authorized by law to administer oaths. They were officers in the county of Rensselaer, authorized by law to administer oaths. If this was not a technical compliance with the statute, we think the defect was cured in both instances by the relator failing to make the same one of the grounds of the certiorari, as section 1 of chapter 269 of the Laws of 1880 requires the relator in his petition to specify the grounds of the illegality. No such ground having been specified in the petition, we think the point cannot be made on this appeal.

On the whole case, we see no error for which the judgment should be reversed.

LEARNED, P. J., and LANDON, J., concurred in the result.

Judgment affirmed, with ten dollars costs and disbursements.